UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YSABELLE BOUACHANH NACHACK,<br>Plaintiff,<br>v.<br>WALMART INC.,<br>Defendant. | Case No. 24-cv-00027-SVK<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Plaintiff Ysabelle Nachack, proceeding *pro se*, brings this action against Defendant Walmart, Inc. ("Walmart") alleging assault, battery, slander and intentional infliction of emotional distress ("IIED") in connection with an incident that occurred at a local Walmart store on November 15, 2022. Dkt. 39 ("SAC"), ¶¶ 9-11, 22-48. Plaintiff seeks compensatory, special and punitive damages, among other remedies. *Id.*, Prayer for Relief.

The Court held a bench trial on August 17-18, 2025 and heard evidence and oral arguments presented by both Parties. *See* Dkts. 142-43. At the conclusion of Plaintiff's case-in-chief, Walmart moved for judgment on partial findings of fact pursuant to Rule 52(c) on the ground that Plaintiff's evidence was "insufficient to support any of her claims, particularly with regard to damages." Rough Trial Tr. at 59:21-61:3;[1] Fed. R. Civ. P. 52(c). The Court deferred ruling on the motion until the close of evidence. Rough Trial Tr. at 65:19-22; *see* Fed. R. Civ. P. 52(c). At the close of evidence, Walmart renewed its motion. Rough Trial Tr. at 187:7-20.

Now, having considered the Parties' evidence and arguments, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) and finds in favor of Walmart on all claims. In so doing, the Court **GRANTS** Walmart's

---

[1] As neither party ordered a final transcript, the Court refers to the Rough Transcript against which it has confirmed all citations.

motion for judgment based on partial findings of fact as to damages. However, in the interest of justice and for the completeness of the record, the Court also renders additional findings of fact and conclusions of law as to the other elements of Plaintiff's claims.[2]

## I.  FINDINGS OF FACT

The Court finds the following facts based on the facts stipulated to by the Parties, the testimony and exhibits admitted during trial and all other relevant evidence in the record or judicially noticed by the Court.

### A.  The Parties

1. Plaintiff is a resident of Santa Clara County, California. SAC, ¶ 1. Her father was a general in the Laotian military, and she grew up in Laos. Rough Trial Tr. at 94:14-18. As a child, a military coup forced her to relocate to Thailand for a number of years; thereafter, she emigrated with her mother and sisters to the United States: first, to Amarillo, Texas in 1986 and then to San Jose, California, where Plaintiff graduated from high school and finished some college classes. *Id.* at 94:16-24 (Ms. Nachack); *id.* at 155:12-18 (Dr. Khan).[3]

2. The Court takes judicial notice of the fact, generally known within this Court's territorial jurisdiction and not subject to reasonable dispute, that Walmart is a retailor offering a vast selection of groceries, general merchandise and other products at numerous stores, including in the Bay Area. Fed. R. Evid. 201(b)(1).

### B.  Events Leading up to the November 15, 2022 Incident

3. On October 30, 2022, Plaintiff purchased a hair coloring product online from Walmart. Rough Trial Tr. at 16:3-4. When Plaintiff received the item, the color was not the one she had ordered. *Id.* at 16:4-5. On November 15, 2022, Plaintiff visited a local Walmart store in

---

[2] Any findings of fact that constitute conclusions of law shall be deemed to have been determined by the Court as a matter of law. Likewise, any conclusions of law that constitute findings of fact shall be deemed to have been found by the Court as a matter of law.

[3] Some details regarding Plaintiff's life and the events herein are drawn from the testimony of Walmart's expert witnesses, Drs. Kevin Mikaelian and Salma Khan, who performed physical and mental examination of Plaintiff, respectively. Here, Dr. Khan testified as to what Plaintiff "directly" told Dr. Khan about events in Plaintiff's life. *See, generally*, Rough Trial Tr. at 154:19-155:25. Such reports from Plaintiff to Drs. Mikaelian and Khan are not hearsay. Fed. R. Evid. 801(d)(2).

2

Milpitas, California intending to exchange the item for the correct item. *Id.* at 16:8-12; *see also* Ex. C (Plaintiff's Initial Ethics Complaint).[4] She was accompanied to the store by her friend, Joshua Gomez. *Id.* at 16:10-12 (Ms. Nachack); *id.* at 37:13-17 (Mr. Gomez).

4. Upon their arrival at the store, around 11:00 a.m., Plaintiff approached the customer service desk while Mr. Gomez went to use the restroom and subsequently look at DVDs and electronics. *Id.* at 16:13-14 (Ms. Nachack); *id.* at 37:16-24 (Mr. Gomez).

### C. Issues with Regard to Evidence and Credibility

5. Through the course of various witnesses' testimony, and in the record of this action, it has become clear that only three individuals witnessed what occurred at the customer service desk: Ms. Nachack, Walmart's customer service associate Patricia Caves and seasonal customer service associate Tanaz Shahinparvaz. *Id.* at 67:17-68:3, 70:18-24, 78:13-16 (Ms. Nachack); *id.* at 106:22-107:3, 108:21-109:15 (Ms. Caves); *id.* at 102:17-23, 103:13-17, 103:21-22 (Ms. Aurora Lopez, the Store Manager for Walmart's Milpitas store).

6. Walmart had video surveillance cameras monitoring the customer exchange desk, (*see* Ex. E), but as testified to by Walmart's Asset Protection Operational Coach, Amy Jonathans, Walmart only retained video for 30 days unless a physical injury was reported either by a customer or a Walmart employee. Rough Trial Tr. at 119:17-121:12, 122:21-123:8. No video would be retained otherwise, even if a customer requested video retention, (*id.* at 123:9-24), and no video was preserved in this case.

7. Direct evidence as to what occurred on November 15, 2022 when Plaintiff attempted to exchange her hair coloring product is problematic in several respects. First, as explained in paragraph 5, above, no video footage of the incident exists. *See, supra*, ¶ 5.[5]

8. Ms. Shahinparvaz, who is no longer employed by Walmart and lives outside the jurisdiction of this Court, could not be compelled to testify and did not testify in this matter. *See*

---

[4] References to exhibits are to the admitted exhibits, filed at Dkt. 145.
[5] Plaintiff requested an adverse inference be drawn in her favor from the absence of video footage. Dkts. 92, 104. The Court denied Plaintiff's request at the pre-trial conference, electing instead to weigh Plaintiff's direct testimony in light of all of the evidence, including Defendant's cross-examination. Dkt. 139.

Dkt. 119 at 3-4 (describing the background of Ms. Shahinparvaz's absence).[6]

9. Ms. Caves, although credible, could not recall the incident in question because she assists, on an average, two- to three-hundred people with returns and exchanges every day. Rough Trial Tr. at 107:6-12, 108:24-109:9.

10. Much of Plaintiff's testimony with regard to the incident appeared colored by what the Court determines to be an irrational belief that Walmart is retaliating against her, hacking her files and may attack her in the future. Rough Trial Tr. at 91:13-92:19. In addition, Plaintiff's testimony was at times internally inconsistent (*e.g.*, testimony relating to her fall: Plaintiff testified that she was wearing 5-inch high platform heels, one of which "fell off" and broke, causing her to fall, but that she was able to walk out of the store on them)) and undermined by her own testimony as to her subsequent actions (*e.g.*, while ostensibly in fear for her safety, she waited just outside the store for Mr. Gomez rather than moving to her car). *E.g.*, *id.* at 71:22-72:6, 74:23-75:6, 79:1-8, 80:4-5, 80:22-81:11. Accordingly, while Plaintiff may sincerely believe her testimony, the Court does not find her testimony as to the details of the November 15, 2022 incident—except where corroborated by the testimony of other witnesses or by documents in the record reflecting facts other than Plaintiff's version of events—credible.[7]

**D.   The November 15, 2022 Incident**

11. At approximately 11:00 a.m., Plaintiff approached the customer service desk and sought to exchange her hair coloring product. Rough Trial Tr. at 16:8-10, 16:13-14 (Ms. Nachack); *id.* at 37:13-20; Ex. C. Plaintiff spoke to Walmart's customer service associate, Ms. Caves. Rough Trial Tr. at 67:17-68:3 (Ms. Nachack); *id.* at 106:22-107:3, 109:13-109:15 (Ms. Caves).

12. Plaintiff presented her cell phone showing an online receipt/order confirmation as well as the products in their Walmart reusable bag, but Ms. Caves denied her exchange and told Plaintiff that she had to call online customer service. Rough Trial Tr. at 16:14-21, 67:24-68:10

---

[6] *See* Dkts. 79-80, 83 (discovery dispute statements); Dkts. 84, 87, 89 (Court Orders).
[7] *See also, infra*, ¶ 23 (Plaintiff's "misguided denials of plainly available medical records is another example of testimony further undermining Plaintiff's credibility.").

4

(Ms. Nachack);  Ex. B (Walmart Internal Incident Report);  *see* Exs. G-H (photographs of merchandise in the Walmart bag at issue, *see* Rough Trial Tr. at 25:3-23);  *see also* Exs. I-J (screenshots of Plaintiff's online receipt/order confirmation).  As Walmart witnesses explained, Walmart's policy was that, for items purchased online, they could be returned for a refund or store credit, but they could not be exchanged in-store.  Rough Trial Tr. at 102:1-13 (Ms. Lopez);  *id.* at 107:14-108:12 (Ms. Caves).

13.     Plaintiff asked to speak to a manager.  *Id.* at 16:24-25, 70:15-17;  Ex. C.  Ms. Caves went into a back room, taking the product with her;  she returned with another customer service associate, Ms. Shahinparvaz.  *Id.* at 17:1, 70:18-24;  Ex. B.  Although Plaintiff believed Ms. Shahinparvaz to have been a manager, she was not one.  Rough Trial Tr. at 70:20-24;  Ex. C.

14.     The Court does not find that any of the remainder of the incident occurred as Plaintiff testified.  First, there is no evidence—aside from Plaintiff's testimony, which the Court does not credit—that Walmart's employees "yelled" or "shouted" at her or that the employees "chased" her out of the store.  *Contra id.* at 112:14-19 (Ms. Caves) ("Q. In your 29 years of experience at Walmart, have you ever chased a customer out of the store? A. No.");  *contra id.* at 17:14-16, 72:5-10, 78:17-23 (Ms. Nachack).  There is evidence in the record that Plaintiff told Mr. Gomez and the Walmart Ethics Department that the "manager" (*i.e.*, Ms. Shahinparvaz), accused her of stealing.  *See* Rough Trial Tr. at 17:1-8 (Ms. Nachack);  *id.* at 43:13-17 (Mr. Gomez);[8]  Ex. B ("she come back and accused the customer to be stealing the products");  Ex. C ("manager took package from her … and said she stole the [item]").[9]  Nonetheless, this evidence ultimately

---

[8] Plaintiff's statements to Mr. Gomez are out-of-court hearsay.  However, Plaintiff testified at length that she was "shocked and humiliated" by the incident, and Mr. Gomez testified that he received a call from Plaintiff and immediately met her outside the store where she relayed what happened.  Rough Trial Tr. at 17:9-18:3, 80:13-23 (Ms. Nachack);  *id.* at 37:25-38:14, 40:1-3, 42:20-43:17 (Mr. Gomez).  The Court weighs Mr. Gomez's account for the truth of the matters asserted according to the excited utterance exception.  Fed. R. Evid. 803(2).

[9] The statements contained within the Walmart ethics complaint (Ex. C) and internal incident report (Ex. B) are out-of-court statements recorded by Walmart's employees, in turn recording out-of-court statements by Ms. Nachack.  Based on the testimony of Ms. Gutierrez, a Walmart "Front End Coach," the Court finds that Exs. B-C are admissible as records kept in the course of regularly conducted activities of Walmart.  *See, generally*, *id.* at 54:6-58:8;  Fed. R. Evid. 803(6).  Plaintiff's statements therein were made at or near the times that Plaintiff contacted Walmart (both created on November 15, 2022) and are admissible as excited utterances.  Fed. R. Evid 803(2).

5

reduces to nothing more than Plaintiff's say-so. Considering and weighing all of the evidence presented, the Court finds that while Plaintiff did tell Mr. Gomez and the Walmart Ethics Department that Ms. Shahinparvaz accused Plaintiff of being a thief, it is unlikely that this occurred.

15. Plaintiff also asserts that, during this incident and without warning, Ms. Shahinparvaz suddenly "jumped" from behind the counter and "grabbed" the bag out of Plaintiff's hands, that the two fought over the bag and that Plaintiff fell (or her heels fell off, or that one was broken, causing her to fall) to the floor. *Id.* at 71:7-72:6, 73:22-74:14. The Court does not find Plaintiff's account credible. For example, Mr. Gomez's testimony only partially supports Plaintiff's account: she told him that "they accused her of stealing[;] one of the ladies, I don't know who it was, she said they grabbed the bag from her hand and … they were tugging on the bag," with no mention of Plaintiff falling. *Id.* at 43:11-17. Additionally, Ms. Caves testimony generally undermines the account. *See id.* at 111:17-112:19. Moreover, neither the record of the ethics complaint nor the internal incident report include any mention of a physical altercation, each mentioning only that "the employee"/"manager," *i.e.*, likely Ms. Shahinparvaz, "took the product" or "took her package" before returning it to Plaintiff. *See* Exs. B-C. At most, the Court concludes that Ms. Shahinparvaz took Plaintiff's bag at some point and returned it to her at another. There is no credible evidence of any back-and-forth physical contest or any fall.

16. Plaintiff left the store after the incident, which according to her lasted about 20 or 30 minutes, and called her friend, Mr. Gomez, from the front of the store. Rough Trial Tr. at 17:17-19, 17:25-18:3, 79:1-20 (Ms. Nachack); *id.* at 37:25-38:14 (Mr. Gomez). Plaintiff drove the two of them away, while Mr. Gomez called Walmart customer service, with Plaintiff on speaker phone, and, after being transferred to the ethics department, reported the incident. *Id.* at 38:15-40:3. Mr. Gomez did not observe any injuries on Plaintiff at the time, except for a "little red mark" on her hand. *Id.* at 44:3-9.

////

////

////

////

### E. Plaintiff's Injuries

17. Plaintiff testified in her case-in-chief that she seeks "damages for [her] physical injuries and emotional trauma" from the incident. Rough Trial Tr. at 18:19-22. Plaintiff did not call any witnesses, lay or expert, in support of her alleged physical or emotional/mental injuries. *See* Rough Trial Tr. at 14:13-58:25 (Plaintiff's case-in-chief).

#### 1. Plaintiff's Physical Injuries

18. Walmart presented testimony from its expert, Dr. Kevin Mikaelian, who reviewed Plaintiff's medical records and conducted a physical examination. *Id.* at 128:18-129:14.

19. Plaintiff testified, at various points, that she hurt her back during the incident and as a result is no longer able to sit for eight hours to work. *See, e.g.*, Rough Trial Tr. at 96:25-97:12. During Dr. Mikaelian's April 16, 2025 examination of Plaintiff, she complained of constant lower back pain. *Id.* at 129:25-130:4. Dr. Mikaelian concluded from his examination that while Plaintiff had some issues with her lower spine at L4 and L5, her medical records showed that she suffered from a spinal condition that was "degenerative," not "acute." *Id.* at 130:18-21, 131:1-4, 131:13-133:3. In other words, Plaintiff's lower back pain was not due to "something caused by a specific incident," such as the incident at Walmart. *Id.* at 133:6-16. The Court finds Dr. Mikaelian's opinion persuasive and concludes that Plaintiff's lower back pain is degenerative and not acute.

#### 2. Plaintiff's Emotional and Mental Trauma

20. Plaintiff testified in both her case-in-chief and on cross-examination about the "shock[]" and "humiliate[ion]" she felt as a result of the incident. *See id.* at 17:9-18:3, 80:13-23. She also testified about seeking mental help for anxiety after the incident, and about the fear of retaliation and attack that she lives with. *Id.* at 90:18-92:23.

21. Walmart presented testimony from its expert, Dr. Salma Khan, who reviewed Plaintiff's mental health treatment and records and conducted two examinations. *Id.* at 143:3-144:22. From her findings, Dr. Khan concluded in relevant part that Plaintiff "did have some delusions of paranoia [] that others were out to get her, … was quick to anger," and had "general symptoms of depression [and] anxiety." *Id.* at 150:5-151:4.

22. Through her interviews and examination of Plaintiff, Dr. Khan encountered numerous other potential causes of stress and trauma in the course of Plaintiff's life and diagnoses of mental disorders that long predated the November 15, 2022 incident. In relevant part, Dr. Khan explained that such sources of potential trauma included:

    a. When Plaintiff was a child, under the age of 13, a communist regime took over her country of Laos, forcing her, along with her mother and sisters but without her father, to flee to Thailand. *Id.* at 154:16-155:2. Plaintiff ultimately lived three years in a refugee camp in Thailand. *Id.* at 155:3-7. *See also id.* at 94:14-21 (Ms. Nachack).

    b. In 2000, Plaintiff was a victim of sexual assault. *Id.* at 161:4-161:23, 165:23-166:6 (Dr. Khan); *see also* 95:3-5 (Ms. Nachack).

    c. Plaintiff has suffered from three miscarriages, including one in 2022. *Id.* at 152:1-17 (Dr. Khan); *id.* at 95:25-96:5 (Ms. Nachack).

23. Dr. Khan explained that Plaintiff had been diagnosed with anxiety, and that other healthcare providers had made notes of anxiety, depression, and/or paranoia, several times prior to the November 15, 2022 incident, including in 2015, April 2020, May 2020, July 2020 and October 2020. *Id.* at 152:18-24, 157:19-159:18. Dr. Khan also testified that Plaintiff had been prescribed various psychiatric medications. *Id.* at 152:25-154:15. In her cross-examination, Plaintiff challenged these records, asserting that she "do[esn't] remember taking any medication, mental health or any psychiatric medication prior to 2022," and had "no history" of such. *Id.* at 174:6-175:1. Such misguided denial of plainly available medical records is another example of testimony further undermining Plaintiff's credibility.

24. Based upon her evaluation of Plaintiff and her medical records, Dr. Khan opined that, whatever traumas Plaintiff suffered from, including any "posttraumatic stress disorder, depression, generalized anxiety disorder, panic disorder or … any aggravation of any underling emotional problem," none were "secondary to the alleged incident at Walmart on November 15, 2022." *Id.* at 172:8-20. She "did not believe that there was any aggravation or initiation of any mental health disorder from" the incident. *Id.* at 162:10-12, 171:2-6.

////

### F. Plaintiff's Evidence of Damages

25. During trial, Plaintiff testified as to three categories of damages she suffered from the incident: medical damages, lost wages and pain and suffering. *Id.* at 27:19-34:22; Dkt. 140 (Plaintiff's Damages Statement), *as modified* at Rough Trial Tr. at 5:14-14:11.

26. As to medical damages, Plaintiff testified to: $11,583.06 billed by Santa Clara Valley Medical Center and/or Santa Clara Valley Mental Health Services; $1,321.72 billed by Sterling Physical Therapy; about $1,000 billed by Ehab Yacoub, MD, Inc., $18923.75 billed by Kaiser Permanente Medical Group; about $3,708 billed by Justin Lo, MD; and $491 billed by Grace Chiropractic. Rough Trial Tr. at 28:10-33:7; Dkt. 140 (Plaintiff's Damages Statement), *as modified* at Rough Trial Tr. at 5:14-14:11.[10] Plaintiff did not, however, provide any testimony or documents explaining or linking these amounts to any injuries sustained as a result of the November 15, 2022 incident. *See id.* Accordingly, the Court does not find that Plaintiff incurred medical damages as result of the November 15, 2022 Incident.

27. As to lost wages, Plaintiff testified that she worked as an accountant prior to an injury at her work, making $100,000 annually. Rough Trial Tr. at 33:11-14. She testified that she injured her back lifting heavy boxes for her employer in September 2022, but she returned to work for a limited term of one month in October, 2022. *Id.* at 95:20-96:1, 97:12-18. She testified that, because of this incident, she is unable to return to work because she cannot "sit for more than eight hours for work." *Id.* at 96:25-97:12. On cross-examination, Plaintiff admitted that she has been offered jobs, which she has refused. *Id.* Plaintiff has not provided any testimony, beyond her own the "eight hours" limitation, about limits on her ability to work. *Id.* Accordingly, the Court does not find that Plaintiff has lost any wages as a result of the November 15, 2022 incident.

28. Finally, Plaintiff testified as to pain and suffering due to her pain management treatment and surgery. Rough Trial Tr. at 34:12-18. Plaintiff estimates her own pain and

---

[10] The Court excluded certain damages testimony and evidence proffered by Plaintiff where she had not previously provided such evidence to Walmart. Rough Trial Tr. at 5:14-14:11. Plaintiff was allowed to testify only as amounts proposed by Plaintiff that Walmart acknowledged receiving during discovery. *Id.*

suffering to be worth approximately $1,022,545.38. *Id.* Plaintiff has not provided any testimony linking this pain and suffering to any of her alleged emotional or mental trauma but only to her physical injury. *See id.* Accordingly, the Court does not find that Plaintiff has any pain and suffering arising out of the November 15, 2022 incident.

## II.  CONCLUSIONS OF LAW

### A.  Plaintiff's Causes of Action for Assault and Battery

Plaintiff alleges that Walmart, through its employees, assaulted and battered her. SAC, ¶¶ 22-29. In California,

> The elements of a cause of action for **assault** are: (1) the defendant acted with intent to cause harmful or offensive contact, or threatened to touch the plaintiff in a harmful or offensive manner; (2) the plaintiff reasonably believed he was about to be touched in a harmful or offensive manner or it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm. The elements of a cause of action for **battery** are: (1) the defendant touched the plaintiff, or caused the plaintiff to be touched, with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by the defendant's conduct; and (4) a reasonable person in the plaintiff's position would have been offended by the touching.

*Carlsen v. Koivumaki*, 227 Cal. App. 4th 879, 890 (2014) (emphasis added). Plaintiff has failed to demonstrate either assault or battery by a preponderance of the evidence.

As to assault, as a "general rule," "[m]ere words, however threatening, will not amount to an assault." *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1604 (2012) (holding that "[Defendants] aggressively approach[ing] [Plaintiff] and threaten[ing] to both beat and kill him and the family dog" was insufficient where the defendants neither "displayed a weapon, took a swing at [Plaintiff], [n]or otherwise attempted to touch him."). There is no credible evidence that Walmart's employees accused Plaintiff of stealing or that they "yelled" or "shouted" at her or physically chased her out of the store. Findings of Fact ("FOF"), ¶ 14. The most physical contact that may have occurred, or was threatened to have occurred, was that a Walmart employee took Plaintiff's bag. *Id.*, ¶ 15. The Court finds this does not constitute assault for two reasons.

First, while Plaintiff was certainly offended by the touching of her bag, the Court does not

10

find that her apprehension of harmful or offensive contact was *reasonable*. *See de la Cerra Frances v. de Anda*, 224 F. App'x 637, 639 (9th Cir. 2007) ("Summary judgment was proper on nine of the ten assault claims because there was no evidence of Plaintiff's being placed in reasonable fear of imminent physical harm."). Second, Plaintiff has failed to show that the incident harmed her in anyway. *See* FOF, ¶ 19 (although Plaintiff does suffer from back pain, such back pain is degenerative and not acute in nature – *i.e.*, it was not caused by a discrete incident, such as the incident at Walmart); *see also* FOF, ¶¶ 21-22, 24 (although Plaintiff may suffer from some anxiety and depression, there was no "aggravation or initiation" of any emotional or mental condition by the Walmart incident). Accordingly, Plaintiff does not satisfy the second, fourth or fifth elements of a claim for assault.

For similar reasons, the Court concludes that Plaintiff has not shown she was battered. Again, the Court does not find that "a reasonable person in [Plaintiff's] position would have been offended" by the mere taking of her bag. *See* FOF, ¶¶ 14-15 (Plaintiff did not prove yelling, jumping or sudden lunging, chasing, a back-and-forth contest over the bag or her fall). Moreover, as with her assault claim, Plaintiff has failed to show that the alleged battery caused her any physical or mental harm. *See* FOF, ¶¶ 19, 21-22, 24.

In sum, Plaintiff has failed to prove by a preponderance of the evidence that Walmart is liable for either assault or battery.

### B. Slander

Slander, or oral defamation, "involves the [(1)] intentional publication of a statement of fact which is [(2)] false, [(3)] unprivileged, and [(4)] has a natural tendency to injure or which causes special damage." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1179-80 (2000). Here, the Court finds that, despite her close-in-time statements to Mr. Gomez, Plaintiff has not shown by a preponderance of the evidence that she was accused of stealing or otherwise slandered by Ms. Shahinparvaz, Walmart's employee. *See* FOF, ¶ 14.

Without credible proof of a "statement," Plaintiff cannot show publication, falsity or tendency to injure or special damages. *See, e.g.*, *Joel v. Valley Surgical Ctr.*, 68 Cal. App. 4th 360, 372 (1998) ("A cause of action for defamation challenges communications and not 'conduct.'

The two forms of defamation are slander or libel. Slander requires an 'oral utterance;' libel requires a 'publication.') (cleaned up) (internal citations omitted). Accordingly, because Plaintiff has failed to prove "an oral utterance," Plaintiff has failed to prove by a preponderance of the evidence that Walmart is liable for slander. *Id.*

### C. Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress may be a stand-alone cause of action. The elements of a cause of action for IIED are: "(i) outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress." *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 300 (1988). To be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* Here, Plaintiff has failed to prove IIED.

First, the conduct of Walmart's employees during the incident was not "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* The evidence supports only that Walmart's employees took and then returned her bag. *See* FOF, ¶¶ 14-15. Plaintiff did not prove any of her other allegations, including that they called her a thief, yelled, shouted, jumped at her, chased her out of the store, engaged in a back-and-forth tugging contest over the bag, or caused her to fall. *Id.* Without more, her proof as to Walmart's employees' conduct is insufficient.

Second, while Plaintiff testified to and the Court credits her severe emotional distress, Plaintiff did not prove either that Walmart's employees acted intentionally or recklessly to cause such distress or that there was an actual and proximate causal link between the tortious conduct and her emotional distress. *See* FOF, ¶¶ 14-15, 21-24. To the contrary, the testimony of Dr. Khan established that Plaintiff's anxiety, depression and overall emotional trauma were present before the incident and were more likely caused by other traumatic events throughout Plaintiff's life. *See* FOF, ¶¶ 22-23.

Accordingly, Plaintiff has failed to prove by a preponderance of the evidence that Walmart is liable for IIED.

////

### D. Damages

Generally, "[t]o establish that there was a 'tortious act', plaintiff must, of course, prove not only the existence of an actionable wrong, but also that damages resulted therefrom." *James v. Pub. Fin. Corp.*, 47 Cal. App. 3d 995, 1000 (1975).

#### 1. Plaintiff Has Not Proved Damages Caused by Assault, Battery or IIED

All of the causes of action at issue here expressly require that Plaintiff prove some harm as a result, except for slander per se. *See Carlsen*, 227 Cal. App. 4th at 890 (assault and battery require that "the plaintiff was harmed"); *Nally*, 47 Cal. 3d at 300 (1988) (IIED requires that the plaintiff suffer "severe emotional distress."). Additionally, these three causes of action require proof of causation. *Carlsen*, 227 Cal. App. 4th at 890 (assault requires that "the defendant's conduct was a substantial factor in causing the plaintiff's harm," while batter requires that the harm or offense be "by the defendant's conduct"); *Nally*, 47 Cal. 3d at 300 (1988) (IIED requires "an actual and proximate causal link between the tortious conduct and the emotional distress."). The Court notes at the outset that, for the reasons explained in Sections II.A, II.C., above, Plaintiff has not proved either harm or causation for her assault, battery or IIED claims.

#### 2. Plaintiff Has Not Proved Any Damages to a Reasonable Certainty

Moreover, damages must be certain. While the requirement of certainty is more often encountered in "contract than in tort actions, [] it does apply to the latter as well." WITKIN, *supra*, Torts, § 1718 (collecting cases). The requirement of "certainty" does not mean that damages must be proved to a specific amount, but that "damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953, 989 (2001).

Here, Plaintiff's damages in all categories are too speculative to entitle her to recovery. Her medical damages, while presented in an amalgamated amount to approximately $37,000, (FOF, ¶ 26), are unaccompanied by any testimony or explanation as to what they were for. Plaintiff did not testify which providers provided physical versus mental health services and did not provide any evidence linking these expenses to the incident in question. *See* FOF, § I.F.

Plaintiff is not entitled to lost wages, as she admitted to having been offered jobs which she refused, without providing any explanation as to why she could not seek jobs compatible with her alleged injuries, *e.g.*, any job with less than eight hours of sitting per day. *See* FOF, ¶ 27. Finally, Plaintiff's testimony as to her pain and suffering are wholly speculative and based on nothing more than her bare assertion. *See* FOF, ¶ 28.

Accordingly, even setting aside issues of causation, Plaintiff has failed to prove any of her damages to a reasonable certainty. This forms an independent basis for finding in favor of Walmart on all claims. The Court **GRANTS** Walmart's motion for judgment on partial findings.

### III.  CONCLUSION

The Court **GRANTS** Walmart's motion for judgment on partial findings as to inadequate proof of damages and accordingly finds in favor of Walmart on all claims.

The Court also finds that Plaintiff has failed to prove the liability or causation elements of her claims and finds in favor of Walmart on all claims on those independent grounds.

**SO ORDERED.**

Dated: September 16, 2025

SUSAN VAN KEULEN
United States Magistrate Judge